46 C.C.P.A. (Patents).

### Application of Norman A. ALTMANN and William H. Bureau.

### Patent Appeal No. 6388.

United States Court of Customs and Patent Appeals.

Dec. 2, 1958.

Cromwell, Greist & Warden, Chicago, Ill. (Fred S. Lockwood, Chicago, Ill., of counsel), for appellants.

Clarence W. Moore, Washington, D. C. (Arthur H. Behrens, Washington, D.

C., of counsel), for the Commissioner of Patents.

Before O'CONNELL, Acting Chief Judge, and WORLEY, RICH, and MARTIN, Judges.

O'CONNELL, Acting Chief Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the final rejection by the Primary Examiner of claim 28 of appellants' application, No. 300,938 for a patent on a method of preparing paper stock. Three apparatus claims have been allowed, but claim 28 was rejected as unpatentable over the cited prior art.

The appealed claim reads as follows:

"28. The method of processing a slurry of wastepaper pulp which has been subjected to a disintegrating action to defiber the wastepaper and dislodge ink and other particles from the fibers, comprising, subjecting an enclosed stream of said slurry of relatively deep cross section to the action of a plurality of high velocity submerged jets of wash water so as to intensely agitate the slurry and disperse the fibers and said particles in the water vehicle while lowering the consistency to a thin watery slurry, and immediately discharging the thin watery slurry onto a screen and draining the water and suspending particles from the fibers so as to leave them in a clean condition."

The only rejection which was affirmed by the board was based upon the following single reference:

Hill et al.      2,641,164      June 9, 1953

Appellants' application relates to a method of processing waste paper pulp which has been subjected to a disintegrating action to defiber the paper and dislodge ink from the fibers. In the method as described and claimed a slurry of such pulp is fed in the form of a relatively deep stream through a scrubbing device where it is subjected to the action of a number of high velocity jets of wash water which agitate the slurry and disperse the particles therein while substantially lowering the consistency, by means of the added water, until the slurry is thin and watery. Immediately thereafter the slurry is discharged onto a screen and the water, along with ink particles, is drained from the fibers leaving them in a clean condition.

The patent to Hill discloses a method of treating paper which has been either coarsely pulped or "essentially repulped" by grinding or otherwise. A slurry of such pulp is fed between two closely spaced plates which are provided with projections, and one of which is gyrated relatively to the other to agitate the pulp. The plates are spaced more closely at their peripheries than at the central portions, and the slurry enters at the central portions and flows outwardly to the periphery, so that it is compressed and thickened by dewatering as it moves into the area where the plates are more closely spaced. Apparently the compression is relied on to remove excess water from the pulp, since the patent does not disclose any subsequent screening or dewatering step. During the agitation of the pulp, water in small quantities, is fed through openings in the upper plate and passes through the pulp, after which it escapes through openings in the lower plate.

From our examination of the claims and reference, we find that the following distinctions exist between the claimed process and that disclosed by the patent to Hill:

(1) The rejected claim calls for an enclosed stream of slurry of relatively deep cross section, while the slurry in the reference patent lies between two closely spaced plates, so that it is not accurately described as an enclosed stream and we question whether it is relatively deep within the meaning of the claim.

(2) The claim states that the slurry is subjected to the action of high velocity jets of water which intensely agitate it. In the patent it is stated that "a slow flow of water is caused to pass from the

top plate through the agitated layer of pulp and out through the bottom plate," and that a very small pressure differential, on the order of one pound per square inch, is sufficient to cause the necessary flow. Clearly, therefore, there are no high velocity jets; and the agitation of the pulp is not produced by jets, but by the mechanical action of the plates.

(3) The claim states that the consistency of the pulp stream is lowered to a thin, watery condition, whereas in the Hill method the pulp stream is increased from as low as four to 25 per cent or even 40 per cent.

(4) The claim calls for a final dewatering step in which the pulp is discharged on a screen and the water is drained from it. No such step is disclosed by Hill.

The Board of Appeals was of the opinion that the differences above noted involved largely matters of degree, and that the introduction of the wash water in the process disclosed by Hill "would necessarily result in lowering the consistency even though the slurry is ultimately dewatered."

It is difficult to agree with the conclusion expressed by the board in the quoted statement. Since water is being drained from the pulp, through the openings in the bottom plate, at the same time when wash water is being slowly supplied through the upper plate, it is not necessary that there should be any decrease in consistency. Even if there is a momentary local decrease at the points where the wash water enters the pulp, it is clear that the general uniform trend is toward substantially increased consistency, and that the requirement of the claim that the slurry be decreased to a thin watery consistency is not suggested by the disclosure of Hill.

While some of the limitations set forth in the appealed claim might be regarded individually as involving matters of degree, it is clear, that taken together, they define a process widely different from that of the cited reference. What that patent discloses is esssentially the mechanical agitation, compressing and dewatering of wet pulp. The amount of water added during the process is small and, in fact, the patentees state that the pulp may initially contain enough water so that none need be added. The consistency of the pulp increases throughout the process and is apparently so high at the finish that no additional dewatering step is required. As contrasted with this, the appealed claim calls for a process in which the pulp is agitated by high velocity jets while being thinned to a watery consistency, and is then separately dried on a screen. In our opinion there is no such similarity between the claimed invention of the applicants and the disclosure of the cited reference as would justify the rejection here under consideration.

The decision of the Board of Appeals is reversed.

Reversed.